UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| LARRY G. KENNEDY, ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | 3:08-cv-0111-RLY-WGH | |
| ) | | |
| EQUIFAX, INC., TRANSUNION, LLC, ) | | |
| EXPERIAN, SAXON MORTGAGE ) | | |
| SERVICES, INC., SAXON CAPITAL, ) | | |
| INC., AND MORGAN STANLEY, ) | | |
| Defendants. ) | | |

**ENTRY ON SAXON MORTGAGE'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Larry G. Kennedy ("Mr. Kennedy"), maintains a mortgage with defendant, Saxon Mortgage Services, Inc. ("Saxon Mortgage"). Mr. Kennedy alleges that Saxon Mortgage erroneously reported to several credit reporting agencies that "Plaintiff's account was 180 days past due, that Plaintiff had claimed bankruptcy, and that Plaintiff had submitted the mortgage to the bankruptcy court and was now in bankruptcy." (Complaint ¶ 16). Mr. Kennedy alleges that Saxon Mortgage's actions violate the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA"). Saxon Mortgage now moves for summary judgment. For the reasons set forth below, the court **GRANTS** in part, and **DENIES** in part, Saxon Mortgage's motion.

**I.     Summary Judgment Standard**

A party is entitled to summary judgment "if the pleadings, depositions, answers to

1

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

**II.    Background**

The evidence submitted by the parties consists of three affidavits: (1) the Affidavit of Stephanie Gales ("Gales Aff."); (2) the Affidavit of Larry G. Kennedy ("L. Kennedy Aff."); and (3) the Affidavit of Jill Kennedy ("J. Kennedy Aff."). These affidavits,

viewed in the light most favorable to the Plaintiff, contain the following facts:

1. Mr. Kennedy and his wife, Jill ("Mrs. Kennedy"), maintain a mortgage with Saxon Mortgage.

2. In January, February, and March 2008, Mr. and Mrs. Kennedy failed to receive a monthly statement from Saxon Mortgage. (J. Kennedy Aff. ¶ 4). They were therefore required to make a payment by phone or other means. (*Id*.).

3. On March 17, 2008, Mrs. Kennedy called Saxon Mortgage about the above-referenced circumstance and was advised, through Saxon Mortgage's automated system, that the account held in the name of Mr. Kennedy was in bankruptcy. (*Id.* ¶ 5). Mrs. Kennedy then spoke with a representative of Saxon Mortgage and was told that the account had been included in a bankruptcy in Opelika, Alabama. (*Id.*). The Saxon Mortgage representative informed Mrs. Kennedy that Saxon Mortgage had received a Proof of Claim on March 13, 2008, and directed Mrs. Kennedy to contact the bankruptcy court. Mrs. Kennedy then made a payment by phone and asked Saxon to review its record. (*Id.*). Mrs. Kennedy was informed that the account would be reviewed and that nothing had been reported to the credit bureau on this account. (*Id.*).

4. On that same day, Mr. Kennedy contacted the Federal Bankruptcy Court in Montgomery, Alabama, and received a copy of the Bankruptcy Petition under Case No. 08-80182 for Larry D. Kennedy, whose address was identified as 444 County Road 416, Woodland, Alabama, 36280. (L. Kennedy Aff. ¶ 3).

5. Mr. Kennedy contacted Saxon Mortgage and explained the discrepancy. Saxon Mortgage advised that it would correct the error in the account. (*Id*. ¶ 4).

6. In April 2008, Mrs. Kennedy contacted Saxon Mortgage to advise that she and Mr. Kennedy had not received a mortgage statement. Saxon Mortgage advised Mrs. Kennedy that attorney's fees of $175.00 had been assessed to the account as a result of the bankruptcy filing. (J. Kennedy Aff. ¶ 6). Mrs. Kennedy explained the situation – i.e., that the bankruptcy showing up on their account was in the name of Larry G. Kennedy in Alabama and not Larry D. Kennedy in Indiana. Saxon Mortgage advised that it would put in a work order to have the fee waived. (*Id*.; L. Kennedy Aff. ¶ 5).

7. On May 20, 2008, Mrs. Kennedy contacted Saxon Mortgage to inform the company that she and Mr. Kennedy had not received a statement, and was informed by a representative that a $75.00 fee had been assessed to the account. (J. Kennedy Aff. ¶ 7). Mrs. Kennedy again explained the situation and asked to speak to a manager, who advised that she would make sure that the matter was cleared up and statements resumed. (*Id*.). The manager stated that nothing negative had been reported to the credit bureau. (*Id*.).

8. Mr. Kennedy called Saxon Mortgage the following day and was again informed the matter would be cleared. (L. Kennedy Aff. ¶ 6).

9. On May 30, 2008, Mr. Kennedy called Saxon Mortgage and informed the representative that the $75.00 late fee had not been waived. After Mr. Kennedy

explained the situation to the representative, he asked to speak to the Legal Department and was put on hold. (*Id.* ¶ 7). When the representative resumed the conversation with Mr. Kennedy, she informed him that Saxon Mortgage was in error and that the account would be corrected. (*Id.*).

10. On June 2, 2008, Mrs. Kennedy contacted Saxon Mortgage and requested a payment history of the account be faxed to her. The account revealed the $75.00 late fee still due, no evidence of late payments, and a $175.00 collection fee. (*Id.* ¶ 8). Mrs. Kennedy inquired as to why Saxon Mortgage reported that the account was 180 days past due, as payment on the account had never been late. (*Id.*). The representative stated that there was no record of a report to the credit bureau. (*Id.*). Mrs. Kennedy then asked to speak to a supervisor, and, not pleased with the response, asked to speak to the supervisor's supervisor, a woman named Harriet, who apologized for the problems associated with their account. (*Id.*). She directed Mrs. Kennedy to fax a letter explaining the problems with the account and that she would make sure the problems were addressed. (*Id.*). Harriet advised Mrs. Kennedy that she would receive a faxed letter within seventy-two hours stating the mistake and correction was sent to the credit bureaus. (*Id.*).

11. The letter faxed to Saxon Mortgage by the Kennedys reads as follows:

> Please find attached a history of our problems with our account since January 2008. Due to an error clearly on the part of Saxon Mortgage[,] Larry G. Kennedy has been reported to the three major credit reporting agencies as 180 days past due, in Chapter 13 Bankruptcy and on a payment

> plan. We have repeatedly tried to correct your error with no resolution. We have asked several times if anything was reported to the credit bureaus of a negative nature on this account and have been told no.
>
> We have never been late on this account and feel we are in a situation we can not resolve. We have spoken to an Attorney today about this matter and feel we have no other options.

(J. Kennedy Aff., attachment).

12. On June 5, 2008, Mrs. Kennedy spoke with a manager of Saxon Mortgage and explained, once again, the situation and stated she had not received a faxed response. (*Id.* ¶ 9). The faxed letter was eventually received that day which indicated that "an update has been sent to the national credit bureaus advising them to remove any notation of bankruptcy from [your] credit file." (*Id.*; *see also*, Gales Aff. ¶ 3(d)). No mention was made as to the 180 day past-due report on the account or to the payment plan.

13. Mrs. Kennedy thereafter contacted a representative of Saxon Mortgage and explained that the aforementioned letter did not address all of the errors in their account. Mrs. Kennedy was advised that, in the representative's opinion, the error could not be corrected. (*Id.* ¶ 10). Mrs. Kennedy spoke to two other representatives, and was eventually told to send another letter to Saxon Mortgage with a detailed description of the errors at issue, and that Saxon Mortgage would review the request. (*Id.*). Mrs. Kennedy was asked to contact Saxon Mortgage in two weeks for an update. (*Id.*). To date, the Kennedys have not received a

response. (*Id*.).

14. At all relevant times, the Kennedys have always paid their account in a timely fashion. (*Id*. ¶ 11; L. Kennedy Aff. ¶ 8).

### III. Discussion

The FCRA imposes certain requirements on consumer reporting agencies (like Experian) and on entities that furnish information (like Saxon Mortgage) to those agencies to ensure "fair and accurate credit reporting." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Lang v. TCF Nat'l Bank*, 2008 WL 5111223 (N.D. Ill. Dec. 1, 2008); 15 U.S.C. § 1681(a)(1). The Kennedys contend that Saxon Mortgage furnished information to a credit reporting agency that it knew or reasonably should have known was inaccurate in violation of 15 U.S.C. § 1681s-2(a). The Kennedys also contend that Saxon Mortgage failed to reasonably investigate and respond to the problems associated with their account in violation of 15 U.S.C. § 1681s-2(b). The court will address each claim below.

#### A. Section 1681s-2(a)

Saxon Mortgage contends that the Kennedys have no standing to bring a claim under Section 1681s-2(a) because the enforcement of that section is limited to governmental agencies. Based upon the plain meaning of Section 1681s-2(a) and the case law interpreting that section, the court finds that Saxon Mortgage is correct. *See Perry v. First Nat'l Bank*, 459 F.3d 816, 822 (7th Cir. 2006) (stating that the FCRA provides an exemption for private rights of action under Section 1681s-2(a)); *Nelson v. Chase*

*Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) ("Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies."); *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 502 (W.D. Tenn. 1999) ("The FCRA limits enforcement of subsection (a) of § 1681s-2 governing supplying accurate information exclusively to certain federal and/or state officers."); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F.Supp.2d 964, 967 (N.D. Ill. 2005) ("It is undisputed that there is no private right of action under § 1681s-2(a)"); *Lang v. TCF Nat'l Bank*, 2008 WL 5111223, at *3 (N.D. Ill. Dec. 1, 2008) ("No private right of action exists, however, for violations of section 1681s-2(a)."); *see also* 15 U.S.C. § 1681s-2(d) (read in conjunction with Section 1681s-2(c), Section 1681s-2(d) limits the enforcement of claims asserted under Section 1681s-2(a) to "Federal agencies and officials and the State officials identified in section 621 [15 U.S.C. § 1681s]"). Accordingly, because the Kennedys have no standing to bring a claim under Section 1681s-2(a), Saxon Mortgage's Motion for Summary Judgment with respect to that claim is **GRANTED**.

### B.    Section 1681s-2(b)

Unlike Section 1681s-2(a), consumers like the Kennedys may bring an action against the furnisher of information for violations of Section 1681s-2(b). The statutory section is not triggered by a consumer's direct complaint to the alleged furnisher of incorrect information; rather, it is triggered when "the furnisher receives notice from a CRA [credit reporting agency] that a consumer disputes a reported item." *Lang*, 2008 WL 5111223, at * 3. Once the furnisher receives the requisite notice, " the furnisher of

information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. § 1681s-2(b)). Whether the defendant's investigation is reasonable is a question of fact reserved for a jury. *Id*. "[H]owever, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Id*.

The parties dispute when Saxon Mortgage received notice of the Kennedys' consumer dispute. The Kennedys maintain that Saxon Mortgage received notice in March 17, 2008; Saxon Mortgage counters that it received notice on June 2, 2008. As noted above, the Kennedys only evidence consists of their respective affidavits. The Kennedys' affidavits fail to inform the court as to when they reported[1] the disputed issues pertaining to their account to a credit reporting agency. Thus, the court is left with the only evidence presented by Saxon Mortgage – the Gales Affidavit. That affidavit provides that Saxon Mortgage first received notice of the dispute from a credit reporting agency on June 2, 2008. (Gales Aff. ¶ 3(b)). That, therefore, is the date the court must

---

[1] The Kennedys' Complaint alleges that in April 2008, they contacted TransUnion and Experian to report the inaccuracies in their account submitted by Saxon Mortgage. (Complaint ¶ 18). The Kennedys' Complaint, however, is not evidence, nor do the Kennedys purport to rely upon it. In their Response Brief, they make specific mention that the only evidence that they rely upon is their respective affidavits.

9

accept as true.

That is not the end of the discussion. The court must also analyze the reasonableness of the investigation conducted by Saxon Mortgage and determine whether it promptly corrected the disputed information with the credit reporting agency. On this issue, the court must find in favor of the Kennedys. Although Saxon Mortgage avers that it cleared their account as far as the pending bankruptcy is concerned by June 4, 2008, the Kennedys still have disputed and ongoing issues with their account which have not, to this day, been corrected. Accordingly, the court must **DENY** Saxon Mortgages' Motion for Summary Judgment with respect to this claim.

**IV.    Conclusion**

For the reasons explained above, the court **GRANTS** in part, and **DENIES** in part, Saxon Mortgage Services, Inc.'s, Motion for Summary Judgment (Docket # 47). The court **GRANTS** the motion with respect to Mr. Kennedy's claim under 15 U.S.C. § 1681s-2(a), and **DENIES** the motion with respect to Mr. Kennedy's claim under 15 U.S.C. § 1681s-2(b).

**SO ORDERED** this  12th   day of June 2009.

                                        _____
                                        RICHARD L. YOUNG, JUDGE
                                        United States District Court
                                        Southern District of Indiana

Electronic Copies to:

Scott B. Cockrum
HINSHAW & CULBERTSON
scockrum@hinshawlaw.com

Robert R. Faulkner
rrfaulk@evansville.net

Brian L. Goins
HINSHAW & CULBERTSON LLP
bgoins@hinshawlaw.com

Leslie C. Shively
SHIVELY & ASSOCIATES
shively@sigecom.net